GEOFFREY A. HANSEN
Acting Federal Public Defender
ELIZABETH FALK
Assistant Federal Public Defender
450 Golden Gate Ave, 19th Floor
San Francisco, CA 94102
Telephone:     (415) 436-7700
Facsimile:      (415) 436-7706
Elizabeth_falk@fd.org

Counsel for Defendant JERNIGAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MILLER JERNIGAN,<br><br>Defendant. | No. CR 2020-429 RS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:   November 22, 2021<br>Time:  1:00 p.m.<br>Court: The Honorable Richard Seeborg |

**OVERVIEW**

Miller Jernigan now stands to be sentenced, pursuant to an oral modification of a B plea agreement, to a term of imprisonment of 24 months including a 9 month penalty above the low end of the Guideline range stated in his Plea Agreement. The parties have agreed to this sentence for a number of reasons, with judicial efficiency and economy in mind. Mr. Jernigan fully acknowledges that he broke the law in this case and made immature decisions while on pretrial release, and that this Court must sentence him to serve a prison term. He fully accepted responsibility early in this case by means of the Plea Agreement. He stands by the Plea Agreement and its oral modification asks the Court to impose a 24 month total disposition in light of the parties' negotiated bargain.

The Court should honor the deal the government and Mr. Jernigan have made, and impose a sentence of 24 months in custody. Mr. Jernigan negotiated this disposition in good faith, and declined to bring a motion to suppress in the case that would have required the expenditure of judicial resources. The Court has a significant interest in honoring plea deals made between the government and the defendant under these circumstances, as it is important to encourage the expeditious administration of justice when the United States and a defendant are able to reach agreements. Defendants will be more likely to accept plea agreements in the future when there is confidence that the Court will accept those agreements. In this case, the Court should accept the judgment of the United States Attorney's Office that the proposed disposition is the correct one.

Mr. Jernigan also understands that the real story of this case will be told on supervised release. Unlike the state parole system, federal supervised release is an intensive and purposely invasive supervision process. His determination to change will be evident from the results of that process, and this Court will have ample opportunity to punish Mr. Jernigan or impose significant restrictions on his liberty if he fails to comply. State parole will also continue to monitor Mr. Jernigan. These important factors, along with the others listed below, also support this Court's conclusion to honor the oral modifications to the Plea Agreement.

## ARGUMENT

**I.      The Instant Violation of 18 U.S.C. § 922(g)(1) is Grounded in A Car Seizure About a Broken Tail Light**

On January 14, 2020, Mr. Jernigan was arrested while sitting as a passenger in a car driven by his friend, Germani Easterling. PSR ¶ 8. The car was pulled over under under the auspices of a broken brake light. *Id.* The firearm that is the subject of this case was discovered shortly thereafter in the car. Although Mr. Jernigan initially panicked when law enforcement pulled the car over, he eventually calmed down, put up his hands and stated he wanted no trouble with police. *Id.* Other than the unmarked nature of the firearm, there is nothing aggravated about the instant 922(g) offense that would lead the Court to reject the parties' modified Plea Agreement.

//

//

### II. Mr. Jernigan Has Only One Prior Felony Adult Conviction and Has Never Served a Substantial Time in Prison

Mr. Jernigan appears before the Court with a Criminal History Category of III. PSR ¶ 42. The majority of his CHC points stem from a prior conviction for robbery from 2015. *Id*. at ¶ 38. Because of the procedural posture of that case and the jail credits that had accumulated by the time probation was revoked, Mr. Jernigan only spent 6 months in CDC on the prior robbery offense. *Id*. (indicating Mr. Jernigan was paroled on 9/15/2018). A 24 month term of incarceration here is accordingly a proportionate result given Mr. Jernigan's dearth of adult criminal history.

### III. Because Mr. Jernigan Has Not Had A Fair Opportunity to Address the June 29, 2021 Arrest, the Court Should Not Consider Same When Sentencing Mr. Jernigan

To the extent the Probation Office disagrees with the recommended 24 month proposed sentence on the part of the parties by finding that "the defendant committed a new offense" while on pretrial release, the Court should be mindful that the facts of the state case were never adjudicated and merely remain allegations at this juncture. No court has actually made any finding that Mr. Jernigan "committed a new firearms offense" while on pretrial release, and the weapon located in the Mercedes has not been tied to Mr. Jernigan specifically by DNA or any other means. No preliminary hearing even occurred in state court, and per Mr. Jernigan's state court lawyer, outstanding discovery remained at the time Mr. Jernigan opted to accept a 24 month resolution here that resulted in a dismissal of his state case. In her view, the new firearms case was not open and shut by any means. In this respect, Mr. Jernigan wants to make clear to the Court that his acceptance of a 24 month revised plea offer here is grounded in his failure to appear for sentencing and absconding from pretrial. It should <u>not</u> be interpreted as a quasi-guilty plea to the June 29, 2021 state court charges, which he had every intention of fighting before the opportunity arose for a global resolution. It <u>should</u> be interpreted as a part of his sincere apology for cutting off his ankle monitor and failing to appear for sentencing. He fully recognizes that his behavior was immature and wrong, and that he must pay a penalty for that conduct.

In the Presentence Recommendation, the Probation Officer recognizes that "there are several factors warranting a sentence below the Guideline range including the traumatic events in his childhood and his involvement in the juvenile justice system at a young age." Recommendation at 3. Prior to Mr. Jernigan's poor decision to abscond from pretrial supervision, the undersigned had planned to ask for a

12 month and 1 day sentence, which would have been the equivalent of a 10 month sentence. While there is no guarantee that this Court would have departed from 15 months to 12 months and a day, the fact that Mr. Jernigan has readily accepted, *at minimum*, a 9 month penalty for absconding (from 15 months to 24 months) should signal to the Court that Mr. Jernigan fully accepts responsibility for that conduct and immature decision making. Nine months in custody is ¾ of a year, and is not a small amount of time to spend behind bars thinking about how to avoid poor decision-making in the future. Had the Court accepted a 12 month and 1 day sentence, Mr. Jernigan is now in the position of doing an extra year in custody for failing to appear for sentencing and absconding. This is a sufficient sanction for Mr. Jernigan's pretrial conduct in this case. The extra 6 months requested by Probation is not necessary.

All told, the government is satisfied with the extra 9 months Mr. Jernigan has agreed to serve as a result of his absconding from pretrial supervision, and in its exclusive judgment, has opted not to file new charges. The Court should not second-guess the prosecution's discretion in this regard, as it alone is in the best position to evaluate the likelihood of success on those new charges. Moreover, in lieu of wasting the Court's time adjudicating Guideline disputes, the parties have instead agreed to a sentence that basically takes them into account. As previously stated, the Court has an interest in encouraging efficient and expedient plea bargaining in situations such as these, and also an interest in inspiring confidence in defendants that plea bargains are meaningful and valued by the Court. Six extra months in custody for Mr. Jernigan is not worth the Court turning its back on these important principles.

In light of these factors, Mr. Jernigan requests a sentence of 24 months in custody, three years of supervised release, and a $100 special assessment.

//

//

//

//

//

4

U.S. VS. JERNIGAN, CR-20-429 RS
DEFENDANT'S SENTENCING MEMO

# CONCLUSION

For the aforementioned reasons, this Court should follow the parties Plea Agreement and impose a total overall sentence of 21 months in custody, including a concurrent 8 month sentence for the supervised release violation in Case No. 17-102.

DATED: November 16, 2021

Respectfully submitted,

GEOFFREY A. HANSEN
Interim Federal Public Defender

/S
ELIZABETH FALK
Assistant Federal Public Defender